UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD EARL PALLASKE,            ) Case No. C06-1735-RSL-JPD
                                  )
    Plaintiff,                    )
                                  )
  v.                              )
                                  ) REPORT AND RECOMMENDATION
ISLAND COUNTY, et al.,            )
                                  )
    Defendants.                   )
_____)

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Richard Earl Pallaske, a state inmate, is proceeding *pro se* and *in forma pauperis* ("IFP") in this 42 U.S.C. § 1983 civil rights suit against Island County, Island County Jail Medical Staff, Suzanne Sinclair, Island County Auditor, and William Dennis, Jail Administrator. Dkt. No. 7. Plaintiff alleges that defendants were deliberately indifferent to his need to see an ophthalmologist for treatment of a chemical burn on his left eye. *Id.* at 4. Plaintiff was arrested while working in a methamphetamine lab, and his left eye was exposed to ammonia during the arrest. Dkt. No. 74, Ex. C at 1. He alleges that due to defendants' indifference to his serious medical needs, the chemical burn and resultant infection blinded his left eye. Dkt. No. 7 at 4. Defendants moved for summary judgment, Dkt. No. 74, presenting evidence that (1) in an incident six months prior to his arrest plaintiff splashed ammonia in his left eye, (2) his left eye was already blind at the time he was arrested, and (3) defendants were

REPORT AND RECOMMENDATION
PAGE – 1

not deliberately indifferent to plaintiff's medical needs. Dkt. No. 75, Exs. C, F. After careful consideration of the motion, the governing law and the balance of the record, the Court recommends that defendants' Motion for Summary Judgment be GRANTED, and plaintiff's case be DISMISSED with prejudice.

## II. FACTS AND PROCEDURAL HISTORY

On November 3, 2003, plaintiff was arrested during the execution of a search warrant at a home in Oak Harbor, Washington. Dkt. No. 75, Ex. A at 2. Plaintiff was mixing chemicals at the time the warrant was executed, and splashed ammonia in his left eye. Dkt. Nos. 7 at 3, 74 at 2. This was the second time in approximately six months plaintiff suffered chemical exposure to his left eye. Dkt. No. 75, Ex. C at 1. During the booking process plaintiff complained of his eye injury, and on that same day defendants transported plaintiff to the Emergency Department of Whidbey General Hospital where he received treatment from Dr. Sandra Horning. Dkt. No. 75, Exs. A at 4, C at 1. Dr. Horning reported that it was "important" for plaintiff see an ophthalmologist "because [he could not] see out of [his] left eye," and recommended that plaintiff see ophthalmologist Dr. Mark Cichowski in two days. Dkt. No. 75, Ex. C at 2. Plaintiff did not see Dr. Cichowski within the recommended two days, but he was treated by the Island County Jail medical staff on multiple occasions during the following weeks. Dkt. No. 75, Ex. F. On November 20, 2003, Dr. Cichowski examined plaintiff and reported that he had a poor prognosis of ever seeing with his left eye again. *Id*. at 4.

Plaintiff filed an Application to Proceed IFP and a Proposed § 1983 Civil Rights Complaint on December 5, 2006, Dkt. No. 1. On January 30, 2007, plaintiff's IFP application was granted. Dkt. No. 6. On June 19, 2007, plaintiff filed a Motion for Extension of Time to Complete Discovery, Dkt. No. 24, and the Court granted plaintiff nine additional months, or until May 2, 2008. Dkt. No. 32. On May 5, 2008, plaintiff filed a motion requesting an additional 120 to 180 days for discovery, Dkt. No. 69. He also filed a Motion to Appoint

Counsel on March 17, 2008. Dkt. No. 65. On June 2, 2008, defendants moved for summary judgment, arguing that plaintiff cannot produce any evidence that defendants acted with deliberate indifference, that he had sight in his left eye at the time of his arrest, or that the lapse in time between his visits with Dr. Horning and Dr. Cichowski resulted in any significant injury. Dkt. No. 74 at 6.

### III. DISCUSSION

#### A. Federal Rule of Civil Procedure 56(c)

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows [the court] to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[The rule's] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added). "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. Where a party completely fails to prove an essential element of his case on which he bears the burden of proof, all other facts are necessarily rendered immaterial. *Celotex,* 477 U.S. at 322-23.

#### B. Eighth Amendment Cruel and Unusual Punishment

"Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation if the denial amounts to *deliberate indifference to serious medical needs* of the prisoners." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (emphasis added). "This is not an easy test for plaintiffs to satisfy." *Hallett v. Morgan*, 296 F.3d 732, 745 (9th

Cir. 2002). To meet the deliberate indifference requirement under the Eighth or Fourteenth Amendment, "a prisoner must satisfy both the objective and subjective components of a two-part test." *Id.* at 744. "[T]he plaintiff must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin*, 974 F.2d at 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Second, the plaintiff must show that the defendants' response to the plaintiff's serious medical needs was "deliberately indifferent," i.e., that the defendants knew of but disregarded an excessive risk to those needs. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi*, 391 F.3d at 1057 (internal quotation omitted).

If a prisoner is alleging that delay of medical treatment demonstrates deliberate indifference, that prisoner must show that the delay led to further injury. *McGuckin*, 974 F.2d at 1059. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). If the medical treatment rises only to the level of negligence or malpractice, the conduct will not sustain a § 1983 claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 105.

### C. Plaintiff Has Failed to Show that Defendants Were Deliberately Indifferent to His Serious Medical Needs.

In this case, there may be a genuine factual dispute about whether delayed treatment from an ophthalmologist led to blindness in plaintiff's left eye. Dr. Horning's report from November 3, 2003, states that plaintiff had no measurable sight in his left eye, and that plaintiff's left eye had been blind since the first incident of chemical exposure, which occurred approximately six months before his arrest. Dkt. No. 75, Ex. C. Dr. Horning could only know the duration of plaintiff's blindness if he reported it to her. Plaintiff therefore contradicts himself in his complaint where he states that he was able to see with his left eye up to, during, and for several weeks after the chemical exposure incident on the day of his arrest, and that he did not completely lose sight in his left eye until the morning of December 5, 2007. Dkt. No. 7 at 3. A party may not create a genuine issue of material fact merely by contradicting himself. *Anderson*, 477 U.S. at 247-48. Therefore, plaintiff has failed to establish a genuine issue of material fact with regard to whether delayed treatment led to further injury. *McGuckin*, 974 F.2d at 1059.

However, even if plaintiff did provide evidence to support his assertion that he had vision in his left eye until several weeks after his arrest, summary judgment nevertheless would be appropriate in this case. The United States Supreme Court has held that where a party bears the burden of proof on an essential element of his case, and completely fails to prove that element, all other facts are necessarily immaterial. *Celotex*, 477 U.S. at 322-23. Because plaintiff has failed to prove that defendants were deliberately indifferent to his serious medical needs, whether or not plaintiff had sight in his left eye at the time of his arrest necessarily becomes immaterial. Plaintiff first complained of his eye injury during the booking process following his arrest on November 3, 2003. Dkt. Nos. 7 at 3, 75, Ex. A at 4. On that same day, Island County Jail transported plaintiff to Whidbey General Hospital where he was examined and treated by Dr. Horning. Dkt. No. 75, Ex. C at 1. Plaintiff was not taken to see an

ophthalmologist within two days of Dr. Horning's examination as she recommended. He was, however, seen by jail medical staff on multiple occasions during the months of November and December, and was prescribed eye drops and ointment to treat his infection. Dkt. No. 75, Ex. F. Furthermore, the jail medical staff determined that the only treatment that could potentially improve plaintiff's eyesight was a corneal transplant, which was not available while he was incarcerated at Island County Jail. Dkt. No. 75, Ex. F at 2. The jail medical staff either cancelled or declined to schedule an appointment with an ophthalmologist, because the jail could not afford the expense and the medical staff determined the appointment was unnecessary. Dkt. No. 7 at 3.

Defendants' treatment of Mr. Pallaske falls far short of the standard for deliberate indifference to a serious medical need. Medical negligence, even gross negligence, is not sufficient to support a claim of cruel and unusual punishment. *Frost*, 152 F.3d at 1128, *Estelle*, 429 U.S. at 106. It is clear from the record that Island County Jail provided plaintiff with the best treatment available to him within the jail's means. It therefore follows that defendants were not deliberately indifferent to plaintiff's serious medical needs.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that defendants' Motion for Summary Judgment (Dkt. No. 74) be GRANTED and plaintiff's complaint (Dkt. No. 7) be DISMISSED with prejudice. As a result, plaintiff's Motion to Appoint Counsel, as well has his Motion for Extension of Time to Complete Discovery (Dkt. Nos. 65 and 69) are DENIED. A proposed order accompanies this Report and Recommendation.

Dated this 6th day of August, 2008.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge